HATCH (STOUGH v.). See Case No. 13,-499.

HATCH (THAXTER v.). See Case No. 13,-866.

HATCH (THOMAS v.). See Case No. 13,-899.

HATCH v. UNITED STATES. See Case No. 3,097.

HATCH (UNITED STATES v.). See Case No. 15,325.

## Case No. 6,209.

### HATCH v. WHITE.

[2 Gall. 152.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1814.

MORTGAGES — FORECLOSURE — DEFICIENCY MAY BE RECOVERED UPON THE BOND.

After a foreclosure of a mortgage, the mortgagee may still recover at law, upon the attendant bond or note, the deficiency of the mortgaged property to pay the debt due, calculating the value of such property at the time of the actual foreclosure.[2]

[Cited in Upham v. Brooks, Case No. 16,797; O'Maly v. Swan, Id. 10,508.]

[Cited in Hunt v. Peake, 5 Cow. 475, 476; Morse v. Woods, 5 N. H. 300; Southerin v. Mendum, Id. 432; Lovell v. Leland, 3 Vt. 586; Robinson v. Leavitt, 7 N. H. 92; Schnebly v. Ragan, 7 Gill & J. 122; Charter v. Stevens, 3 Denio, 35; Belding v. Manly, 21 Vt. 552; Thurber v. Jewett, 3 Mich. 306; Eastman v. Porter, 14 Wis. 39; Green v. Cross, 45 N. H. 577; Sprague v. Martin, 29 Minn. 229, 13 N. W. 34; Burges v. Souther, 15 R. I. 204, 2 Atl. 441.]

This was an action of debt on a judgment for $4,605.31 damages, and $36.03 costs of suit, recovered in the supreme judicial court of Massachusetts in September, 1810. The defendant, after praying oyer of the record, among other pleas, pleaded, in substance, that the judgment was recovered on a promissory note given by the said White, for the sum of $———, to the said Hatch, on the 20th day of May, 1807, payable at a day long since past, and that, at the time of making the said note, the said White mortgaged to the said Hatch in fee, as collateral security for the payment of the same note, a certain farm situate in Rutland, in Massachusetts; that the said Hatch afterwards, on the 10th of May, 1810, on account of the breach of the condition of said mortgage deed, by open and peaceable entry, made in the presence of two witnesses, took actual possession of said mortgaged premises, and continued that possession peaceably for more than three years after said entry; and the plea then avers a payment of $36.03 in satisfaction of the costs in said suit. To this plea there was a general demurrer and joinder.

Mr. Pitman, for plaintiff.

Mr. Humphreys and E. Cutts, for defendant.

STORY, Circuit Justice. There is no averment in the plea of the value of the mortgaged estate; nor that it was taken in full satisfaction of the debt; nor that the equity of redemption of the mortgagor was fore-

---

[1] [Reported by John Gallison, Esq.]

[2] The point here adjudicated is not yet fully settled. See Lansing v. Goelet, 9 Cow. 346; Lovell v. Leland, 3 Vt. 581, where the S. P. is recognized. See, however, a line of cases collected both ways in 4 Kent, Comm. (5th Ed.) p. 183, notes a, b, c, d. See, also, page 194, where many cases are collected.

closed. The case, therefore, stands drily upon the legal operation of the allegations in the plea unaided by collateral facts. Oyer of the record is prayed and has been allowed by the parties without objection. But, as this judgment is a record of another court, in strictness no such oyer is demandable. It is therefore an irregularity, which, though, not affecting the merits, might well attract the attention of the parties. Waiving however all exceptions to the regularity of the pleadings, I proceed to the consideration of the only question argued at bar by the parties; whether, after a foreclosure of a mortgage (as the entry and continued possession for three years pleaded in this case are by the statute of Massachusetts admitted to be) the mortgagee can, in a suit upon the attendant note or bond, recover the deficiency in value of the mortgaged estate to satisfy the debt due to him.

It is contended by the defendant, that the foreclosure is either an absolute purchase of, or an election to take, the land in full satisfaction of the debt; and by the plaintiff, that it amounts to a satisfaction of so much only of the debt, as equals the value of the land. If the doctrine asserted by the defendant be true, it will be found in many instances to work great injustice. Where the value of the property mortgaged, whether real or personal, is less than the debt, no foreclosure of the equity of redemption, and no absolute ownership of such property, can ever be acquired, but upon the absolute extinguishment of the whole debt. Under such circumstances, the value of the pledge in the hands of the mortgagee would be materially diminished, and it would frequently prove, in literal exactness of language, mortuum vadium, a dead and worthless security. If the mortgagee be compellable to make an election, the pursuit of a personal remedy on the attendant bond is as much an abandonment of the pledge, as the appropriation of the latter is an abandonment of the debt. In a case therefore of suspected insolvency he would be encircled with perils on every side; and, instead of a double security for his debt, would be left with scarcely a single plank to save himself in the shipwreck. The argument, which would lead to such consequences, is not easily admissible, and if it stand at all, it must be upon technical principles, or authorities, which cannot now be questioned. A mortgage is but a mere security for the debt, and collateral to it. The debt has an independent existence, and remains with all its original validity notwithstanding a release of the mortgage. The former is the principal, and the latter an incident, though not an indispensable incident. An assignment of the debt will, in equity, if not at law, carry the mortgaged property along with it; and a release of the debt will relieve the property from all farther claims of the mortgagee. Martin v. Mowlin, 2 Burrows, 969; Green v. Hart, 1 Johns. 580. Where the contract executed between the parties is, strictly speaking, a mortgage, that is, a conditional conveyance of the property subject to be divested by a performance of the condition, by nonperformance the conveyance becomes absolute, according to the express stipulations of the parties. Where the contract amounts but to a pledge, that is, a mere deposit as security, redeemable on payment of the debt, the creditor acquires a lien or qualified property to that extent; but the stipulations of the parties in no event import a conveyance of the absolute property to the creditor. If he can acquire it, it can only be by an appropriation recognized and enforced by law, in aid of his right, upon the default of the debtor; as seems to have been the case by the ancient writ transmitted to us by Glanville. Lib. 10, c. 6; Mores v. Conhan, Owen, 123. But an absolute property in the pledge acquired either way, by the stipulations of the party or by the course of the law, upon the default of the debtor, would not seem of itself to operate an extinguishment of the debt secured by a covenant or agreement independent of such pledge. The parties have not agreed to an extinguishment of the debt in such an event, and it is difficult to perceive, how the law should found a peremptory bar, upon the default of the very party who pleads it, against another to whom no laches can be imputed. If, indeed, during the time of redemption, the pledge be injured or lost, or wrongfully detained, there seems reason to hold, as in the ancient law, that a proportionate value should be deducted from the debt, unless a restoration or satisfaction were otherwise made. Glanv. lib. 10, c. 8. But where there is no such ingredient in the case, the debt ought to retain its original validity; and if equity should interfere to enlarge the time of redemption, or to prevent a double satisfaction, it is the utmost exercise of its authority, which justice or good conscience would seem to require. To deprive the creditor even of a single satisfaction of his debt, in favor of a negligent or fraudulent debtor, would not comport with the maxims, which usually govern courts acting ex aequo et bono. Upon principle then, there would seem no reason to restrain the mortgagee from every remedy in rem and in personam, until he has obtained a full satisfaction of his debt.

Let us now examine the point with a view to authorities. No case has been cited from the English reports, and as far as a diligent search could enable us to pronounce, no case exists at law, in which the point has been solemnly presented for adjudication. This universal silence, in a case of so frequent occurrence, affords a pretty strong argument, that at law such a plea has never been held a sound defence. Yet, even at law, the incidental expressions of learned judges show the general understanding of the profession on the subject; and the frequent applications to chancery for injunctions, to restrain the

creditor from pursuing his personal remedy, have drawn from that court explicit avowals. In Smart v. Wolff, 3 Term R. 342, Lord Kenyon, comparing it with the case before him, says, "as in case of a pawn, the right to detain which is not devested by the pawnee's also taking a covenant as farther security, on which he may sue the person of the covenantor. The covenant is only considered as an additional remedy, and the party may proceed on both." In Schoole v. Sall, 1 Schoales & L. 176, Lord Redesdale declared, that a mortgagee had a right to proceed on his mortgage in equity, and on his bond at law, at the same time. In Aylet v. Hill, in 1779, 2 Dickens, 551, and again in Tooke v. Hartley, in 1786, 2 Brown, Ch. 125, and Took v. ——, 2 Dickens, 785, Lord Thurlow, upon an application for an injunction, held that notwithstanding a foreclosure, the mortgagee had a right to proceed at law on his bond, and might recover on such suit the deficiency of the mortgaged estate to cover his debt; and he declared the law to be now so established. The same may be inferred from the early case of Dashwood v. Blythway, 1 Eq. Cas. Abr. 317, the only effect there attributed to such suit being, that it opened the foreclosure, and let in the equity of redemption of the mortgagor. It is true, that Lord Thurlow in Took v. ——, 2 Dickens, 785, (which, notwithstanding some discrepancy in dates, is probably the same case as in 2 Brown, Ch. 125), is said to have declared, that after a foreclosure, so long as the mortgagee kept the estate, he must take the pledge as a satisfaction, because, by not knowing what it would produce, he could not say any thing was due; but if he sold the estate fairly and without collusion for the best price, and it produced less than the debt, he would be entitled to recover on the bond for the deficiency. The reason given for this distinction does not seem satisfactory. The actual value of the estate may as well be ascertained, while it is in the hands of the mortgagee, as after a sale; and indeed must be so ascertained, in order to see if it was sold at the best price. At least the fact is not more difficult to settle, than many which ordinarily engage the attention of courts and juries; and if the deficiency be once found, the same equity to have it paid exists in both cases. Besides, if the debt be deemed satisfied while the estate is in the mortgagee's hands, it is not easy to conceive how, by his own act of transfer, he can defeat the legal effect of that satisfaction. And if the doctrine in Dashwood v. Blythway be correct, there would be still less reason to allow the mortgagee to recover after a sale, because, as it would be inequitable to open the foreclosure against the purchaser, it would enable the mortgagee to defeat the revival of the equity of redemption resulting from his personal suit. It was this last consideration, that inclined Lord Eldon, in Perry v. Barker,

8 Ves. 527, to hold, that after a foreclosure and sale of the mortgaged estate, the mortgagee had no right to proceed at law upon the attendant bond, because by the sale he had incapacitated himself to reconvey the estate to the mortgagor; and upon this ground, in the case before him, he granted an injunction until the hearing. In this case however Lord Eldon stated, that in Tooke v. Hartley, Lord Thurlow had held (and so was a MS. report of the case taken by Sir Samuel Romilly) that whether the estate was sold to a stranger, or remained in the mortgagee, there was no distinction, but an action might be brought for the difference. There seems therefore some reason to doubt the accuracy of the report in 2 Dickens, 785. The case of Perry v. Barker, afterwards came to a hearing before Lord Erskine (13 Ves. 197), who after a full argument decided, that notwithstanding a foreclosure the mortgagee had a right to proceed on his bond; but that such a proceeding entitled the mortgagor to redeem, and if the mortgagee had previously sold the estate and could get it back, equity ought to allow him time for the purpose. It seems however to have been his lordship's opinion, that if this could not be done, the mortgagee ought to be restrained from proceeding, and under the peculiar circumstances of the case before him, he decreed a perpetual injunction. We profess ourselves unable to comprehend the particular principles, upon which in either case a court of equity proceeds to restrain a creditor from pursuing his remedy at law, when by the foreclosure he has not obtained a satisfaction of his debt. We should have thought that natural justice, as well as the stipulations of the parties, would have been better subserved by allowing the creditor every remedy in rem and in personam, until his debt should be completely satisfied. If afterwards he should make an oppressive use of his power by attempting to obtain a double satisfaction, then and not till then the interposition of chancery by way of injunction would seem conscientious and salutary.

As little can we comprehend the ground, on which, as in Dashwood v. Blythway, courts of equity have held that a suit on the attendant bond opens the foreclosure, and lets in the equity of redemption. By such foreclosure the mortgagee obtains an absolute estate, which perhaps may well be deemed a purchase at the full value of the land, if less than the debt, and if greater, at the amount of the debt. But why a personal suit to recover the deficiency of the land to pay the debt should change the nature or effect of a foreclosure, has not yet been satisfactorily explained. It is rarely that a foreclosure can take place, where the estate much exceeds the debt in value. Another purchaser is usually found, and a nonredemption therefore affords a pretty strong evidence of an inferiority in value. Besides, is it no inconvenience to the creditor to take

land instead of his money? If, after the foreclosure, the estate should become materially lessened in value, the loss has never been deemed to be the mortgagor's. Why then should he derive benefit from an accidental rise in value, when he has been altogether in default? If, indeed, after a foreclosure, the mortgagee should come into equity to seek relief against the mortgagor, there might be some room to apply the maxim, that he who seeks equity, must do equity. But in fact he only claims the exercise of his legal rights secured to him by contract; and is then told, that he must submit to retrace all his steps, or an injunction will bar his proceedings. And even if such a hard measure of justice were dealt out to the mortgagee, while the property was in his own hands, it would seem not inequitable, when he had rightfully passed it to a purchaser, to hold him entitled to his personal remedy for all the pledgor had failed to pay. That a sale after a foreclosure should be deemed so far a wrongful act, as to draw after it the penalty of a perpetual injunction, is a doctrine not easily reconcilable with the sound principles, which govern contracts of this nature. We are happy to add, that the opinions imputed by the better authorities to Lord Thurlow sanction the doctrines, for which we contend. But whatever may be the effects attributed to a suit in personam after a foreclosure, as to reviving the equity of redemption, such effects can be allowed in chancery only when it acts upon its own peculiar principles, unaffected by statutory provisions. In Massachusetts, where this mortgage was executed and enforced, and of course, by whose laws it is to be regulated, the equity of redemption is limited to three years after possession obtained, and negatived afterwards by the express provisions of the statute. Stat. March 1, 1799, c. 77. The foreclosure therefore, once complete, fixes the absolute rights of the parties, and no subsequent event can control or alter their legal efficacy.

To return; whatever may be the differences of opinion among the learned chancellors on other points, the foregoing examination abundantly shows, that they all proceed upon the supposition, that at law a foreclosure of the mortgage is no bar to an action on the attendant bond; and that equity alone can afford relief by acting on the conscience of the creditor, and decreeing a perpetual injunction. Sitting then in a court of law, we should have no difficulty, even if this were a case primae impressionis, in holding, that the plea is bad, and that the demurrer must be sustained. Our judgment would be, that upon principle the mortgagee must be entitled to recover on the note in damages the deficiency of the mortgaged property to pay the debt, calculating its value at the time of the actual extinction of the equity of redemption; and that, even admitting the foreclosure to be a purchase of the property, in no event could the purchase-money be deemed to exceed the debt. But this question has been solemnly adjudged in the state, where this contract of mortgage was made and to be executed. In Amory v. Fairbanks, in 1793, the supreme court of Massachusetts decided, upon a special plea like the present, that the bar was bad, and the mortgagee entitled to recover the deficiency of his debt, notwithstanding the foreclosure. 3 Mass. 562. At the distance of fourteen years, this decision was cited and approved by the same court, and may now be considered as the settled law of that state. Id. 154. Such an authority, even if not binding on this court, is so conformable with principle and so highly respectable in itself, that it is not easy to shake its force.

It has been argued, that the creditor might in Massachusetts have first sued his note, and levied his execution on the mortgaged estate at its appraised value, and thereby have avoided the ill effects of a foreclosure, if the estate was of less value than the debt, and that therefore there is less reason to hold him entitled to recover, when he elects a foreclosure in the first instance. But is it quite certain that the mortgagee would in equity be allowed in this way to avoid the mortgage? And even if he might, still it might well admit of doubt, how far such a proceeding extinguished his mortgage, so as to let in other intermediate incumbrances and attachments on the estate. If the defendant's argument be correct, the election of a personal suit would amount to a waiver of the mortgage, whether the execution were levied on the mortgaged property, or remained unsatisfied. Yet authority does not seem to countenance such a principle. See Bantleon v. Smith, 2 Bin. 146.

There are some other views of this case, which, if the principal point admitted of doubt, might deserve consideration. The suit is upon a judgment of another state, and must have all the validity and conclusiveness here, that it has there. See [Griffith v. Frazier], 8 Cranch [12 U. S.] 29. If the plaintiff was bound by his election to foreclose the mortgage, that election had been made previous to the original suit, and might have been pleaded in bar to it; and the neglect so to do cannot now be helped. If, on the other hand, the bar did not arise until after the election so made and an actual extinguishment of the equity of redemption, then, by the law of Massachusetts, it was no defence against a suit on the judgment. On the whole, we are of opinion, that the demurrer is well taken, and that judgment on this plea must pass for the plaintiff. Plea adjudged bad.