## SPENCER vs. EXECUTORS OF C. HARFORD.

A release of the *equity of redemption* obtained by a mortgagee, is a satisfaction of the mortgage and also of the bond accompanying it as collateral security, if the property when the release is obtained is equal in value to the debt for which it was mortgaged. If it be of less value than the debt, it is payment *pro tanto*.

A foreclosure of mortgaged premises without sale, does not operate as an extinguishment of the debt, unless the mortgaged premises are of sufficient value to pay the debt.

A plea that the plaintiff in an action of debt on a bond, executed as a collateral security to a mortgage, had become possessed of the equity of redemption by purchase, 'was held bad for the want of an averment that the value of the mortgaged premises, when the equity of redemption was conveyed to the plaintiff, was equal to the amount due on the bond.

So a second plea which alleged that 2 years after the plaintiff became possessed of the equity of redemption, he sold the mortgaged premises for a

sum far exceeding the debt, was also adjudged bad for the want of the same averment, or another that the property was of the same value when the equity of redemption was conveyed to the plaintiff as when he subsequently sold it.

Demurrer .to please. The declaration is in debt on bond executed by the testator to the plaintiff, bearing date 26th of April, 1817, and conditioned for the payment of $220, with interest on 1st. May, 1819. The defendants pleaded four pleas: 1. That on 26th April, 1817, the testator executed a mortgage to the plaintiff of 81 acres of land as collateral security, for the payment of the said sum of $220; that in Septemper, 1818, one Frederick Bushnell commenced a suit in chancery against the testator and others; that in that suit a decree was made, that the testator should pay to Bushnell $778,33 for his costs and charges; that Bushnell caused a fi. fa. to be issued upon such decree, which was delivered to the sheriff of Genesee on 21st April, 1820; that on 1st January, 1821, the sheriff sold the mortgaged premises together with other lots and parcels of land of which the testator was seized, to one Joseph Fellows for $680, gave him a certificate of sale, and afterwards, on 19th July, 1822, by deed conveyed the mortgaged premises to Fellows; that on 6th September, 1823, Fellows, by an indenture, granted and conveyed in fee to the plaintiff the mortgaged premises, and this, &c. wherefore, &c.; 2. The second plea is precisely like the first, with the additional fact, that on 17th November, 1825, the plaintiff, for the consideration of $650, conveyed in fee the mortgaged premises to one John Harford; 3. The third plea is like the first, until and including the setting forth of the conveyance by the sheriff to Fellows; it then proceeds to aver, that by such conveyance, Fellows became seized of the equity of redemption of the premises mortgaged to the plaintiff, and that on 6th September, 1823, the plaintiff requested Fellows either to pay him the said sum of $220 with the interest thereof, or to release to him the said equity of redemption in the said premises; that thereupon Fellows for the consideration of one dollar by indenture duly executed, did release and convey to the plaintiff the said equity of

redemption to the said mortgaged premises, whereby the plaintiff became seised *in fee* of the same, *and so* the defendants say that the sum of money mentioned in the condition of the writing obligatory, with the interest thereof, became satisfied and discharged, and this, &c. wherefore, &c.; and 4. The *fourth* plea is like the third, the additional fact, however, being stated by the plaintiff, after the conveyance from Fellows to him, to wit, on the 17th November, 1825, by deed duly executed, for the consideration of $650, conveyed in fee the mortgaged premises to one John Harford, and so the defendants say the said money in the condition of the said writing obligatory mentioned became satisfied and discharged, and this, &c. wherefore, &c. To these pleas the plaintiff *demurred.*

NEW-YORK,
May, 1830.

Spencer
v
Harford.

*F. M. Haight,* for defendants. 1. The plaintiff having the mortgage as security for the payment of the bond, and having obtained a release of the equity of redemption, the mortgage is satisfied and discharged, and consequently the bond also. (*James* v. *Morey*, 2 Cowen, 246, 286, 301, 2.) If the mortgage be extinguished on the principle of *merger*, it can no more be set up, than if it had been actually paid. 2. The debt has been *paid*, the plaintiff procured a release for the consideration of one dollar and sold the land for $650. 3. The mortgage is entirely gone, evidenced by the conveyance of the plaintiff to a third person.

*J. Dickson,* for the plaintiff. Fellows was a mere stranger to the mortgagor and mortgagee and purchased without notice either express or implied, it not being averred that the mortgage was recorded. The value of the land is not shewn either at the time of the purchase by Fellows or of the conveyance to the plaintiff; the price paid by Harford is no test of such value, as the sale to him was upwards of two years subsequent to the conveyance from Fellows to the plaintiff, and in the mean time valuable improvements may have been made. *James* v. *Morey* is distinguishable from this case: there the mortgage was recorded; the purchaser was the mortgagee and the judgment creditor, and he purchased under the execution subject to the mortgage.

NEW-YORK,
May, 1830.

Spencer
v.
Harford.

A *merger* is never favored in a court of law. (Co. Litt. 338, b.) It does not take place either at law or in equity where the debtor and creditor do not become the same person in interest, (2 Vesey, jun, 264 ;) and is never allowed but to preserve the intention of the parties. (15 Viner's Ab. 362.)

A mortgage is but a mere security for the bond debt, and collateral to it. The debt has an independent existence and remains in its original validity, notwithstanding a release of the mortgage. (*Hatch* v. *White*, 2 Gallison, 152.) Such release is only the abandonment of security, the debt remains. (See *Dexter* v. *Harris*, 2 Mason's R. 531.)

Unless it is to be *presumed* that when a mortgage is taken such mortgage be ample security for the whole debt, a release of the mortgage by merger or otherwise cannot be considered a payment and satisfaction of the debt. Can it be that a mortgagee who purchases in the land of his mortgagor under a prior judgment to save his debt, loses his remedy upon his bond ? It is only where the mortgage money is taken as part of the price that the purchaser becomes in any degree liable to the charge. (2 Br. C. C. 604, 101, 152. 3 Vesey, jun. 131, 2. See also 8 Johns. R. 168. 10 id. 481. 7 Cowen, 662.)

*By the Court*, SAVAGE, C. J. The defendants plead four pleas, the object of which seems to be to set up the same defence, to wit, a satisfaction of the debt by an extinguishment of a mortgage which was given as collateral security at the same time the bond was executed.

The effect of a foreclosure of a mortgage given to secure a bond debt, has been fully considered by Mr. Justice Story, in *Hatch* v. *White*, (2 Gallison, 152,) who comes to the conclusion that in all the cases there is no difference of opinion among the learned jurists whose decisions had been considered, " that at law a foreclosure of the mortgage is no bar to an action on the attendant bond." In the case of *The Globe Ins. Co.* v. *Lansing*, (5 Cowen, 380,) the question was whether a foreclosure of the mortgage, and a sale under it, operated as an extinguishment of the debt, and it was there held that it was an extinguishment no further

than to the amount produced by such sale. The same point has been so decided in the court for the correction of errors, in the case of *Lansing* v. *Goelet*, (9 Cowen, 346, 403.) At the last October term the question was presented upon demurrer, whether a foreclosure of the mortgaged premises without a sale operated as an extinguishment of the debt, and we held that it did not without an averment that the mortgaged premises were of sufficient value to pay the debt. It was there intimated that the usual and proper course in such case is to apply to chancery to restrain the creditor from proceeding at law. But in pursuance of principles heretofore recognized it seems to follow that if the mortgagee prefers a simple foreclosure of the mortgaged premises, he should account for them to the mortgagor to the amount of the debt. If the mortgagee sells the mortgaged premises, and they produce less than the amount of the debt, the balance may be recovered on the bond. If upon the sale the produce equals the debt, the debt is paid; and if more than the debt is produced from the sale, the balance belongs to the mortgagor. I can see no reason why the same principal is not applicable to a foreclosure without sale. The mortgagee should give credit. to the value of the mortgaged premises in his possession. But if such value exceed the debt, a case which seldom happens, the mortgagee is under no obligation to refund. It was the fault of the mortgagor to have left his debt unpaid, and the mortgagee was compelled to take the premises instead of the money. These I understand to be the settled principles applicable to the nature of the defence intended to be set up, and by them the pleas in question must be tested.

The defects in the first plea are, 1st. It does not appear whether the sale to Fellows was by virtue of an older or a junior lien to that held by the plaintiff. 2d. It does not appear whether the purchaser had notice of the mortgage. 3d. It does not appear what was the value of the mortgaged premises; nor is there an averment to shew any thing in this whole transaction which looks like a connection of the estates of mortgagor and mortgagee. The same defects are

found in the *second* as in the *first* plea, and the additional fact does not show a disclosure by the mortgagee.

The third plea states that Fellows, by the sheriff's deed became seised of the equity of redemption; and that being requested by the plaintiff either to pay the debt due him or to assign to him the equity of redemption in the mortgaged premises, Fellows conveyed for the consideration of one dollar, whereby the plaintiff became seized thereof, and the debt became paid and satisfied. The fourth plea is like the third, except it contains the additional averment that the plaintiff on the 17th November, 1825, sold the premises in fee for $650 to John Harford.

We thus learn in these pleas, by way of inference, that Fellows purchased the *equity of redemption* in the mortgaged premises, and that the plaintiff became the assignee of the same for a nominal consideration; and that he sold the premises in fee for $650. Had the third plea contained an averment that the value of the premises when the equity of redemption was conveyed to the plaintiff was equal to the amount due on the bond, or had the fourth plea contained an averment that the property was of the same value when the equity of redemption was conveyed to the plaintiff as when he sold to Harford, or was of value equal to the amount due on the bond, I should think the pleas good in substance, though in some respects informal.

The only effect of the sheriff's sale was to substitute Fellows in the place of the mortgagor; when, therefore, the mortgagor released his equity of redemption for a nominal consideration to the mortgagee, the latter had the whole estate. Whether this effect is produced by a technical *merger* of the equitable into the legal estate, according to 2 Cowen, 246, or whether he holds the legal estate discharged of the condition, according to 2 Mason, 539, it is not important to enquire. The mortgagee becomes absolute owner, as he would by a foreclosure; and if the property when he thus receives it is equal in value to the debt for which it was mortgaged, it is payment in full; otherwise, not; but, in any event, is payment, *pro tanto*, according to its actual value.

The pleas do not contain the necessary averments. It may be that the property was well worth $650 or more when sold to J. Harford, and not worth $100 when the title was vested in the plaintiff; the difference may have been caused by improvments or a rise in the value of the land. The value therefore should appear by proper averments.

The pleas are all bad, and the plaintiff is entitled to judgment upon them, with leave to the defendants to amend, on payment of costs.