[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 332 
The supreme court in this case held, that the stock for which the defendant subscribed, was a security in the nature of a mortgage, for the payment of a debt incurred by the subscription, and that a forfeiture for non-payment was, in effect, nothing more than a strict foreclosure. Upon this branch of the case I have nothing to add to what was written when the case was before the court for the correction of errors. *Page 335 
The notion of a pledge, or mortgage, is now abandoned, and we are asked to sustain the judgment of the supreme court, after repudiating the reasons upon which it was founded.
I agree fully with that learned court, that the plaintiffs had a remedy by action; that the debt of the defendant, created by his subscription, was entire; the calls made by the company, merely ascertaining the amount, and the times when the instalments of that debt should be paid. This is the view taken by the plaintiffs in their declaration, by their counsel in his points furnished upon the argument. Upon this admission, the authority of the supreme court, and the manifest import of the subscription, we are authorized to assume that the defendant contracted one debt of $2100, which he undertook to pay, at such times, and in such instalments, as the company might, by calls for that purpose duly made, designate.
The next question is, as to the effect of the forfeiture made by the corporation upon the debt of the defendant. The act incorporating the plaintiffs, establishes the capital stock, and the price of the shares; section two directs a subscription, and prescribes the duties of the directors in making calls, and the right to forfeit the shares of subscribers for non-payment of the purchase money. (§ 4; Sess. Laws, 1833, pp. 191, 2.) The subscription must be construed, therefore, as if all the provisions of the statute, affecting the liability of the subscriber, or his title to the stock purchased by him, were incorporated in his agreement. This has never been questioned. The subscription, probably with the design of removing all doubt upon this subject, expressly refers to the act, and the defendant engages to pay, in pursuance of its provisions. The defendant then agreed to pay $2100 for 21 shares of stock, at such times, and in such proportion, as the company might direct; under penalty of forfeiture to said company, of said shares, and all previous payments, in case of default. (§ 4.) The company did not sell, nor did the defendant acquire, by this contract, absolute title to the stock. He could obtain that only by the payment of the purchase money. The sale was, in effect, conditional; with a right reserved to the vendor to reclaim the property upon non-payment of any instalment of the purchase money. When *Page 336 
such right is exercised, it is always a bar to any further claim against the vendee upon his contract. There is no case to the contrary. I say this because, after four arguments, no one has been discovered.
An attempt has been made to distinguish the case of Winter v.Livingston, (15 John. 54,) from the present, by the fact that the contract of Winter was made voidable at his election, upon the non-payment of the notes of Livingston; while in this case the agreement, it is said, remains, and the forfeiture attaches to the stock and payments. This was the distinction that Winter went upon in the case cited. He did not repudiate the contract; on the contrary, he attempted to enforce it. But when he took back the subject of the sale, the court determined, as a matter of law, that he discharged the defendant from his obligation to pay. Would it have made any difference in the decision if the forfeiture had been limited to the estate, or interest, acquired by Livingston, instead of the agreement by means of which it was granted? (6 Barn. Cress. 519.) The result would be the same, either way. Winter would reinvest himself with the whole interest in the land, and Livingston would retain nothing, and for that reason, the court held, that he ought to pay nothing. Those who insist upon a distinction are bound to demonstrate that there can be a sale of lands, or chattels, or a subsisting agreement for a sale, obligatory upon the vendee, under which he neither has the property itself, nor any claim to it. It is not an answer to say that the property in the stock passed to the defendant at the time of the subscription. It vested, subject to the right of forfeiture. Livingston, in like manner, took an equitable title in the lands sold to him, with the right of possession. But the contract in that case, and the law of the contract in this, preserved the right to the vendor to resume the subject of the sale, upon non-payment of the price; and if, by enforcing the right, one vendee was discharged, the other should be.
We were told that upon leases containing a clause of forfeiture, and a right of re-entry for non-payment of rent, the rent accruing and due, previous to the re-entry, could be recovered. (6 Hill, 507, ana cases; 6 Bing. N.C. 178; 6 B. Cress. *Page 337 
549.) This is true, and for the obvious reason, that the lessee had bargained for the use of the premises; and for each year, or quarter's occupation, was to pay a fixed sum. He did occupy, and thus received, the entire consideration for the rent sought to be recovered, in the precise manner stipulated by the lessor. The re-entry annulled the lease, and all covenants of the lessee, founded upon the estate demised; but it did not deprive the lessee of his past possession; that, he had purchased, and enjoyed, and should pay for. The cases are direct authority for the defendant; for they show that to the extent that the lessor resumed the thing granted, the lessee was discharged from his covenants. The defendant purchased stock, not the use of stock, nor the privilege of voting for directors. They were incident to the ownership. He bought a marketable commodity, the whole of which the plaintiffs have forfeited to their own use; and if the doctrine, established by these adjudications, is sound, they have thereby discharged him from all further obligation to pay the purchase money. It is immaterial whether the forfeiture is held to abrogate the sale, or is deemed a satisfaction of the debt, by the act of the creditor. The suit is barred on either supposition.
The forfeiture in this case, of the stock sold, to the use of the corporation, was then a discharge of all the debt for which the defendant was at the time liable. It discharged the whole debt or nothing. The forfeiture embraces the entire consideration of the defendant's promise. (13 Ves. 434.) The directors cannot graduate it according to the amount of the call. The right is not divisible, but extends to the whole subject of the contract. The call is made a condition precedent to the forfeiture, theoccasion upon which it may be enforced; but when made, it applies to the "sum subscribed," and not to a particular instalment. (§ 4.) This follows necessarily from the principle, in which we all agree, that there is no legal mode of ascertaining the value of the stock. When the corporation, therefore, without legal process, in virtue of the defendant's contract, or the statute in reference to which it was made, elected to appropriate this property to their own use, they must be deemed to have taken the stock of the defendant, for the whole debt, then unpaid, *Page 338 
for which it was the sole consideration. This consequence results from the fact, that the proceeding was voluntarily adopted by the plaintiffs, in view of a distinct remedy by action, and that it was one which involved no liability to account, whatever might be the value of the property, or the consequences to the defendant.
It was admitted that the forfeiture extinguished, at least, the particular instalment, on account of which it was declared. But no authority, in or out of the act, has been shown, for this limitation. The idea is repudiated by the supreme court, and the application of such a principle would, in many cases, be palpably absurd. For example: the defendant paid ten per cent. in cash, at the time of his subscription. Suppose the directors had then called for the remaining ninety per cent. in various sums, the last of which was five per cent.; that they had waited till the time for the payment of the last instalment had expired, and then forfeited for its non-payment, specifically. This instalment, it is said, would be discharged, but the residue of the debt unaffected. The plaintiffs would then receive the ten per cent. in cash, and all the stock, to satisfy a five per cent. instalment, and the defendant would be still liable to a suit for eighty per cent. of the amount of his subscription. With such privileges corporations ought to flourish. It is substantially the course adopted by the plaintiffs in this case.
It was contended that the remedies by action and by forfeiture were cumulative. If by this, nothing more is understood than that the plaintiffs had the right to sue, or the right to forfeit at their election; or that they might proceed to judgment upon the subscription, and then forfeit the stock for the same delinquency; I have nothing to object. But the converse of this proposition, that they might exercise the right of forfeiture andthen maintain an action, or enforce a judgment, is denied. It presents the distinction between different remedies for the same demand, and a double satisfaction. A forfeiture, when made, is more than a means of obtaining satisfaction; it is itself a satisfaction. A remedy, if we choose to give it that name, which, when adopted, involves a satisfaction of the debt, is never concurrent. It is in its own nature exclusive. The *Page 339 
argument that by the former law, a mortgagee could sue his bond, bring ejectment, and foreclose the mortgage, overlooked the distinction to which I have adverted. The object of all those concurrent remedies was to obtain payment of the money due from the mortgagor. When that object was attained, the right farther to prosecute either was extinguished, with the demand to which it was incident. The illustration would have some application if the mortgagee, after obtaining possession by ejectment, could keep the land, as owner, and recover the debt also.
A majority of the court are of the opinion, for these reasons, among others, that the forfeiture extinguished all the rights, legal and equitable, of the defendant under the subscription to the stock, or the proceeds of the stock, therein mentioned; that the forfeiture was recognized by the contract; that its effect was rightfully to annul the relation of vendor and vendee, established by the agreement of the parties, and to discharge the defendant from all existing liability, founded upon that relation. That, consequently, no action can be maintained for the consideration agreed to be paid for the stock, or any part of it; and that the defendant is entitled to judgment upon the demurrer.