CENTRAL HANOVER BANK AND TRUST COMPANY, Respondent, v. ROSLYN ESTATES, INC., et al., Appellants.

Second Department, June 1, 1943.

*Edmund W. Van Voorhis* and *Joseph S. Catalano* for appellants.

*Francis M. Wistert* for respondent.

JOHNSTON, J. On March 25, 1932, defendant Roslyn Estates, Inc., executed and delivered its bond whereby it covenanted to pay to plaintiff on March 25, 1935, the principal sum of $15,000, with interest to be computed at five per centum per annum, to be paid semi-annually. The indebtedness originated simultaneously with a mortgage covering property owned by the obligor and is secured solely by the mortgage. The mortgage contains the usual covenants on the part of the mortgagor to pay the indebtedness and interest, and also to pay the taxes, water charges, etc., and provides that in default thereof the mortgagee may pay the same. The bond contains the usual provisions incorporating as part thereof all the covenants and agreements recited in the mortgage. Payment of the principal and interest and performance of the terms and conditions of the bond and mortgage were guaranteed by a collateral bond bearing the same date and delivered to plaintiff by defendant Union Mortgage Company. Subsequently,

one Seymour S. Jackson and his wife became the owners of the realty covered by the mortgage. Upon default in the payment of interest, taxes and water charges, plaintiff elected to declare the principal due and on May 3, 1942, commenced an action against the Jacksons, as owners of the property, and defendants, as obligors on the bonds, to foreclose the mortgage, and prayed for a deficiency judgment. During the pendency of the action and on July 2, 1942, the Jacksons, for a nominal consideration of $100, conveyed the realty to plaintiff " subject, however, to the continuing lien " of the mortgage. The deed further provides, " it being the intention of the parties hereto that the lien of said mortgage shall not merge with the fee." Thereafter the court, upon plaintiff's motion, discontinued the action against the Jacksons and plaintiff served an amended complaint containing three causes of action: The first to recover the unpaid interest; the second to recover the accrued taxes and water charges paid by plaintiff; and the third to recover the principal. The interest, taxes and water charges sought to be recovered are the items constituting the defaults upon which the foreclosure action was predicated. Defendants, in identical amended answers and as a second separate and complete defense to the three causes of action, pleaded the conveyance by the Jacksons to plaintiff and alleged that the fair and reasonable market value of the realty, less any amounts owing on prior liens and encumbrances, is in excess of the indebtedness alleged in the complaint. Upon plaintiff's motion the court struck out this defense insofar as it relates to the first and second causes of action and directed partial summary judgment for $598.40 on the first and second causes of action, and severed the action. Defendants appeal. Defendants also appealed from that part of the same order which struck out the first separate and complete defense pleading merger, but that part of the appeal has been abandoned.

Respondent contends that under the moratory statutes a mortgagee may sue in one action — pleading separate causes of action — for interest, taxes, water charges and principal, and the defense of set-off of market value is available only as against a cause of action for the principal. In support of this contention respondent cites *Rochester Trust & Safe Deposit Co.* v. *Hatch* (273 N. Y. 507); *Johnson* v. *Meyer* (242 App. Div. 798, affd. 268 N. Y. 701); *Weinstein* v. *Empire Title & Guar-*

*antee Co.* (257 App. Div. 867); *Erie County Savings Bank* v. *Levi* (255 App. Div. 438); *Westchester Trust Co.* v. *Estate of Underhill, Inc.* (255 App. Div. 1013); *Buell* v. *Sullivan* (250 App. Div. 780); *Union Trust Co. of Rochester* v. *Kaplan* (249 App. Div. 280).

In *White* v. *Wielandt* (259 App. Div. 676, affd. 286 N. Y. 609) we had occasion to consider the cases upon which respondent relies and, concerning them, said: " The rationale behind all these cases is that interest and taxes are not affected by the moratorium statutes, which suspend actions on bonds for default in the payment of principal only, and which allow the fair value of the property to be offset when an action is brought to recover the indebtedness secured by a mortgage and *which originated simultaneously therewith;* that interest and taxes are not affected because they did not originate *simultaneously* with the indebtedness and, hence, they are not part of such indebtedness within the purview of these statutes, and an action is maintainable for their recovery without prejudice to the mortgagee's right to maintain a subsequent action to recover the debt.  To allow this to be done, it was held, would not result in the splitting of a cause of action because the moratorium statutes created an anomalous situation.  They prevented the mortgagee from maintaining an action for the principal only; but a default in the payment of interest and taxes was beyond the protection afforded by such moratorium statutes.  The statutes thus effected a legal severance to the extent that if interest and taxes are paid, the principal need not be paid. In other words, payment of the interest and taxes suspends the payment of principal.  Hence, it was concluded that for a failure to pay the interest and taxes the anomalous situation created by the emergency statutes sanctioned, if it did not authorize, an independent action for the recovery of the interest and taxes. (*Union Trust Co. of Rochester* v. *Kaplan, supra; Westchester Trust Co.* v. *Estate of Underhill, Inc., supra.*)

" The emergency statutes were thus construed and these cases were thus decided primarily for the purpose of preventing the owner from keeping the property while, at the same time, evading his responsibility to pay not only the principal but also the interest and taxes — an abuse which necessarily would result from any other interpretation of the moratorium statutes.  Therefore, interest and taxes must be deemed severable from and not a part of the mortgage debt *only* in determining the scope of moratorium statutes."

In *Union Trust Co. of Rochester* v. *Kaplan* (*supra*) Judge EDGCOMB, relying upon cases in other jurisdictions, stated that where the parties contemplated that the mortgage was to continue after its due date, interest and taxes, etc., are not to be considered as part of the mortgage debt. There is, however, no case in this State which expressly so holds, except under the moratory statutes, and then only for the reasons stated in *White* v. *Wielandt* (*supra*). It should be noted that in *Union Trust Co. of Rochester* v. *Kaplan* (*supra,* p. 284) Judge EDGCOMB also stated: " It is quite apparent that the Legislature, by the adoption of the moratorium statute, intended to separate, if the law had not already done so, a cause of action to recover the principal of a mortgage indebtedness and the interest thereon, even though both were due at the time collection of one or the other was attempted." Indeed, as pointed out in the *White* case (*supra*), the usual bond and mortgage — as in the instant case — clearly show that the indebtedness consists of the total of the principal, interest, and such other sums which the mortgagee has advanced to protect his security. This is also the statutory construction of the mortgagor's covenant to pay. (Real Property Law, § 254, subds. 3, 6.) Moreover, that is plaintiff's own interpretation of its mortgage, for in its present amended complaint plaintiff pleads, as it must, the interest, taxes and water charges as part of the mortgage debt and alleges that they, as well as the principal, were due at the time the action was commenced.

There is another cardinal distinction between this case and *Johnson* v. *Meyer* (*supra*) and all the cases stemming from it and relied upon by respondent. In this case plaintiff is the owner of the fee as well as the mortgagee, whereas in each of the other cases the plaintiff had not acquired the fee but was only the mortgagee.

Here appellants, in seeking to offset the value of the realty, assessed at $15,950 and acquired by the respondent for $100, do not rely upon the moratory statutes. They merely invoke the principle which compels every creditor to apply toward the satisfaction of the debt — which in this case includes the principal, interest, taxes and water charges — the value of the security for the debt which the creditor has received and appropriated to his own use.

It is a well-settled principle that where the mortgagee acquires the fee or equity of redemption by conveyance from the mortgagor *or a subsequent owner,* it constitutes a satisfaction of the mortgage and also of the bond accompanying it if

the property, at the time of the conveyance, is equal in value to the debt for which it was mortgaged. If it be of less value than the debt, it is payment *pro tanto*. (*Spencer* v. *Harford,* 4 Wend. 381, 385; *Herkimer M. and H. Co.* v. *Small,* 21 Wend. 273, 276, affd. 2 Hill, 127, revd. on other grounds, 2 N. Y. 330.) The same principle applies to personal property where the mortgagee retains the chattels as his own. "If they are worth the debt or more, payment will result in full. If they are worth less than the debt, the result is payment on account." (*Harrison* v. *Hall,* 239 N. Y. 51, 53, and cases cited.)

Respondent should not be permitted to obtain a double recovery by appropriating the security and then enforcing the debt without regard to the value of the security. If it had acquired the property by foreclosure — and originally the action was for foreclosure — it would have been compelled, in order to maintain a subsequent action upon the bonds, to allow credit for the value of the property. (Cf. Civ. Prac. Act, § 1078; *President & Directors of Manhattan Co.* v. *Callister Bros., Inc.,* 256 App. Div. 1097, 175 Misc. 421, affd. 260 App. Div. 880.) There can and should be no difference where, as here, respondent has acquired the property by purchase from the owner. The effect of respondent's acquisition of the fee, subject to the lien of the mortgage, was to constitute the property — as between respondent and appellants — the primary fund for the payment of the debt. It follows, therefore, that respondent must collect the total debt either by foreclosure of its surviving mortgage lien or bring suit on the bonds. Having elected to pursue the latter remedy, it must offset the value of the mortgaged property against the total indebtedness. (*Eagan* v. *Engeman,* 125 App. Div. 743.)

In *Eagan* v. *Engeman* (*supra*) the mortgagor conveyed the mortgaged premises to the mortgagee under a deed providing that the mortgage was not to merge in the fee but continue as an existing and enforceable lien. The mortgagee sued on the bond. In affirming a judgment dismissing the complaint, the court held that plaintiff must first apply his interest in the premises to the payment of the debt secured by the mortgage by foreclosing the mortgage, and the fact that plaintiff held title to the premises was not an insuperable obstacle to his foreclosing the mortgage. In a concurring opinion, Mr. Justice INGRAHAM stated "that there was a good equitable defense to a suit upon the bond until the plaintiff had exhausted his remedy upon the land, the primary security, and that defense having been set up in the answer the court was justified in postponing the

enforcement of the bond until the mortgagee had exhausted his remedy as against the primary security for the payment of the mortgage."

It is true that in the *Eagan* case (*supra*) it was the mortgagor who conveyed the equity of redemption to the mortgagee, while here the conveyance was made by a subsequent owner. But that is unimportant. The controlling principle is that a mortgagee who also owns the fee may not recover the indebtedness represented by the bond unless he offsets the value of the mortgaged property against the indebtedness.

" Mortgagees are constitutionally entitled to no more than payment in full." (*Gelfert* v. *National City Bank*, 313 U. S. 221, 233.) The mortgage was executed to secure payment of the total indebtedness. " The contract contemplated that the mortgagee should make himself [itself] whole, if necessary, out of the security but not that he [it] should be enriched at the expense of the debtor or realize more than what would repay the debt with the costs and expenses of the suit." (*Honeyman* v. *Jacobs*, 306 U. S. 539, 542, 543.) It is suggested that as the fair value of the property may be offset against the principal, respondent would not be enriched at the expense of appellants. This may or may not be so, depending upon the value of the property. If respondent's strategical procedure be sanctioned, the consequent injustice is patent, for it will have judgment for $598.40 plus interest, and also will have the mortgaged property, even if it prove to be worth more than the amount of the total indebtedness.

Respondent may not circumvent the equitable rule designed to prevent a double recovery by resorting to the device of suing in separate causes of action for the several parts of a total debt under the pretense that it is permitted so to do by the moratory statutes. The primary purpose of the Legislature in enacting the moratory laws was to prevent such double recovery. (*Hepworth* v. *Manetto Holding Corp.*, 262 App. Div. 877.)

The order and judgment, so-called, should be modified on the law and the facts by striking therefrom everything following the words " hereby is " in the first ordering paragraph and in place thereof inserting the following: " granted to the extent of striking out the first separate and complete defense contained in appellants' amended answers; and in all other respects the motion is denied." As thus modified the order and judgment, insofar as appealed from, should be affirmed, with ten dollars costs and disbursements to appellants.

HAGARTY, J. (concurring). I concur with JOHNSTON, J. I am further of opinion that the order should be reversed on the law and the motion in all respects denied.

As CARSWELL, J., points out in his opinion, this complaint is precisely similar to that upheld by settled authority, typified by *Rochester Trust & Safe Deposit Co.* v. *Hatch* (273 N. Y. 507), wherein similar set-off defenses were held insufficient, with the exception, however, that in this case such defense, and that of merger, are predicated on the fact that prior to the service of the amended complaint changing the nature of the action from one in equity for foreclosure to one at law on the bond, the plaintiff-mortgagee became the owner of the fee of the mortgaged premises. That circumstance renders the defense of merger sufficient. The doctrine of merger, although not generally favored, prevails at law irrespective of intention when different estates meet in the same person, but a different rule prevails in equity. (*Sheldon* v. *Edwards,* 35 N. Y. 279, 285.) As stated in *Smith* v. *Roberts* (91 N. Y. 470, 475): " But while a merger at law follows inevitably upon the union of a greater and lesser estate in the same ownership it does not so follow in equity." This distinction has been uniformly observed. (*Curtis* v. *Moore,* 152 N. Y. 159, 165; *Rae Co.* v. *Courtney,* 250 N. Y. 271, 274; *Dunkum* v. *Maceck Building Corp.,* 256 N. Y. 275, 281; *Hennessy* v. *King,* 225 App. Div. 152, 154, 155, affd. 252 N. Y. 570.)

In equity all the factors may be taken into consideration, particularly that of intent to keep the mortgage alive (*Clift* v. *White,* 12 N. Y. 519, 536), in arriving at a just determination. We are dealing here with a law action, however, and my view is that the reduction of the mortgaged property to ownership in the mortgagee, without the consent of and without notice to the mortgagor, extinguished any remedy which the mortgagee might otherwise have had at law. If this be not so, and the mortgage is to be regarded as a live and independent entity, the result would be that a mortgagee as owner of the property could suffer defaults of payment of interest on his own mortgage and in the payment of taxes, and charge these defaults, under the literal terms of the bond and mortgage, to the mortgagor.

If merger at law be not deemed to have been effected, circuitous litigation would result by reason of the payment of the debt by the mortgagor, with resultant subrogation to it of the mortgage and foreclosure thereof by the mortgagor (*Calvo* v.

*Davies,* 73 N. Y. 211, 215) against the mortgagee as owner of the fee. (*Matter of Wilbur* v. *Warren,* 104 N. Y. 192, 197.)

Even where the mortgagor expressly agreed with the mortgagee that a mortgage was not to merge in the fee, creating a situation where there was a direct agreement between the parties against merger, an action on the bond was held properly dismissed on the ground that foreclosure, at least in the first instance, was the only available remedy. (*Eagan* v. *Engeman,* 125 App. Div. 743.)

In the light of my belief that the defense of merger is controlling and that foreclosure is the only remedy available to the plaintiff, I am unwilling to accept as binding any oral statement on the argument that that defense was abandoned. The defense appears in the answers and the defendants have specifically appealed from that part of the order striking it out. There is no statement in the brief of the appellants that the defense has been abandoned and, on the contrary, it is urged in appellants' fourth point that plaintiff should be relegated to foreclosure as a remedy. The failure of a party to invoke a controlling theory heretofore has not deterred us from basing our determination on it. (*Goodheart* v. *American Airlines, Inc.,* 252 App. Div. 660; *Cobb* v. *Gramatan Nat. Bank & Trust Co.,* 261 App. Div. 1086.)

In the earlier authorities cited by JOHNSTON, J., in his opinion (*Spencer* v. *Harford,* 4 Wend. 381, 385; *Herkimer M. and H. Co.* v. *Small,* 21 Wend. 273, 276, affd. 2 Hill, 127, revd. on other grounds, 2 N. Y. 330) it appears that the defendants were at least entitled to set off against the causes of action of the plaintiffs the reasonable value of the property at the time of the conveyance to the plaintiff. This is inconsistent with the doctrine of merger, but these cases do not seem to have considered that doctrine except where there had been a foreclosure without a sale. In any event, if I am in error as to the applicability of the doctrine of merger, then, for the reasons advanced in the opinion of JOHNSTON, J., particularly that under the circumstances the land has become the primary fund for the payment of the claim, my opinion is that the defense of set-off should be upheld.

CARSWELL, J. (dissenting). The corporate defendants on March 25, 1932, executed respectively an ordinary bond and a collateral bond for $15,000, due March 25, 1935, secured by

a mortgage of the same date on certain real property in Roslyn, L. I. The engagements in the mortgage relating to payment of interest and taxes were incorporated by reference in the bonds. These bonds and the mortgage were delivered to the plaintiff. The property thus encumbered was later conveyed to Seymour Jackson and his wife.

The interest and taxes were seasonably paid and the due date of the principal indebtedness was extended perforce the moratory statutes for the period during which no default occurred in either of these particulars. The Jacksons defaulted in the interest payment due on March 1, 1942, and in the payment of certain taxes and water charges for the years 1941 and 1942. The principal indebtedness thus became due and payment enforceable.

In an action at law on the bonds the plaintiff obligee sued the corporate obligors upon a complaint which sets out three causes of action — the first for the interest in default, the second for the taxes and water charges in default and paid by plaintiff, and the third for the principal in default.

The corporate defendants interposed answers which set out two identical affirmative defenses to each of the three causes of action. The first defense was that there had been a union of title to the fee and the mortgage and an extinguishment of the indebtedness as a result of a conveyance of the mortgaged property by the Jacksons to plaintiff on July 2, 1942. The second defense was that the fair and reasonable value of the mortgaged premises was in excess of the indebtedness alleged in each of the three causes of action.

Plaintiff obligee moved under rule 114, Rules of Civil Practice, to sever the first and second causes of action in relation to the interest and taxes respectively; to strike out the two defenses thereto as being insufficient in law, and, in addition, to strike out the first defense to the third cause of action, and for partial summary judgment. The Special Term granted the motion and from the order and judgment entered the corporate defendants appeal.

On the argument the appellants conceded that the first defense was properly stricken out. Their brief in consonance therewith only challenges the propriety of striking out the second defense. The inquiry on this appeal, therefore, is limited to the second defense. Its sufficiency as a defense raising a triable issue of fact was recognized by plaintiff, so far as the third cause of

action relating to principal was concerned. The severed action relating to it is still pending and is not here involved.

The history of the litigation and whether parts thereof have or have not legal significance have engendered disagreement. The controlling facts are not in dispute. Likewise certain irrelevant facts invoked are undisputed.

On May 3, 1942, plaintiff obligee began an action to foreclose the mortgage and for a deficiency judgment. It joined as defendants the two corporate obligors, and the Jacksons, the owners of the property. Neither of the latter had assumed personally the payment of the principal indebtedness. While the action was at issue the Jacksons conveyed the property to plaintiff for a nominal consideration of $100. The deed specifically provided that there was to be no merger of the fee and the mortgage and that the lien of the mortgage was to continue unimpaired. Plaintiff then moved, on notice to the corporate obligors, for an order to discontinue the action except as to the corporate obligors; to cancel the *lis pendens,* and for leave to serve an amended complaint in an action at law setting forth three causes of action against the corporate obligors for interest, taxes and the principal of the bonds. This motion was granted and an order thereon was entered and served. No appeal was taken therefrom. The amended complaint here involved was accordingly served.

Thus by the process of discontinuance, amendment and severance all that concerns us on this record is a complaint, with two counts, in an action at law seeking the payment by the corporate obligors of interest and taxes, and two defenses thereto which were stricken out. One, concededly, was properly stricken out; and only the propriety of striking out the second defense is challenged, such defense being that the value of the property may be invoked as an offset or defense.

The record in this posture is a counterpart or twin of the record in *Johnson* v. *Meyer* (242 App. Div. 798, affd. 268 N. Y. 701). That action was at law, as in the instant case, for accrued interest and taxes. The defense, as here, invoked the value of the property as an offset. It was held insufficient and plaintiffs had summary judgment. The theory of the holding was that there arose from defaults in obligations under the bond, for the payment of interest, of taxes and principal indebtedness, separate and distinct causes of action at law and that there was no limitation upon the right to separate judgments in full there-

for, except such limitations as are imposed by statute; that the only limitations so imposed are contained in section 1083-b, Civil Practice Act, so far as concerns actions on bonds, and in its counterpart, section 1077-a, so far as concerns actions for the foreclosure of mortgages; and that, as to an action on a bond, the limitation is that the value of such property may be invoked as an offset or defense only as to the principal thereof. This conclusion evolved from the view that the indebtedness, which in the language of section 1083-b originated or was originally contracted for " simultaneously with such mortgage and which is secured solely by such mortgage " referred to the principal indebtedness of the bond, note or other collateral instrument for which the mortgage was given as security and not to interest or taxes; that this contract obligation as to principal, fixed as to amount and time when due, came into existence at the instant the bond was given; that the interest and taxes which subsequently accrued were new debts, variable in amount, which did not exist simultaneously with the giving of the mortgage. Hence as these new debts were not mentioned in section 1083-b as claims against which the value of the property might be offset, the latter may not be invoked for that purpose.

This limitation upon the use of the value of the property in an action upon a bond thus specifically given effect in *Johnson* v. *Meyer* (*supra*) was reiterated in answers to certified questions in *Rochester Trust & Safe Deposit Co.* v. *Hatch* (273 N. Y. 507) and has been enforced in innumerable cases. (*Weinstein* v. *Empire Title & Guarantee Co.*, 257 App. Div. 867; *Erie County Savings Bank* v. *Levi*, 255 App. Div. 438; *Westchester Trust Co.* v. *Estate of Underhill, Inc.*, 255 App. Div. 1013; *Buell* v. *Sullivan*, 250 App. Div. 780; *Werbelovsky* v. *Rosen Bros. News Agency, Inc.*, 249 App. Div. 758; *Union Trust Co. of Rochester* v. *Kaplan*, 249 App. Div. 280.) These recent announcements and reiterations of doctrine are authoritative and controlling. They impel agreement with the decision of the Special Term that this defense is without validity.

At Special Term appellants conceded in their answering affidavit that if plaintiff had brought an action at law for interest and taxes before instituting the foreclosure action, its right to recover could not be challenged and that the defenses invoked would not be efficacious. They, however, made a reservation that such an action could not be maintained because of the insti-

tution of the foreclosure action. This reservation to a correct concession is without validity. The amended complaint, served under an order of the court, superseded the prior foreclosure complaint and the action became one at law. It "proceeds as if the original pleading had never been served." (3 Carmody's New York Practice, § 1141, p. 2518 and cases cited.) Therefore, plaintiff was in the same position as if a complaint in foreclosure had never been served, so far as these corporate obligors are concerned. Consideration of this appeal might well stop here.

However, as the argument has taken on an irrelevant scope which disregards the present nature of this action, and the fact that the claims for principal, interest and taxes are as separate and distinct as if they arose out of wholly unrelated transactions, it will conduce to understanding if certain basic principles are stated. They have been long settled by adjudications, some of which were made before the moratory statutes were enacted.

Interest required to be paid under a contract or an obligation accruing *prior* to the enforceable due date of the principal constitutes a separate cause of action from that of the principal, enforceable as such at the option of the obligee. This because it arises from a separate engagement resting in contract. It is an integral but separable part of the general indebtedness. (*Davison* v. *Klaess,* 280 N. Y. 252, 261; *Matter of Crane* v. *Craig,* 230 N. Y. 452, 461; *Fake* v. *Eddy,* 15 Wend. 76; *Southern Central R. R. Co.* v. *Town of Moravia,* 61 Barb. 180; *Watts* v. *Garcia,* 40 Barb. 656; *Smith* v. *City of Buffalo,* 39 N. Y. S. 881; *Froment* v. *Oltarsh,* 60 Misc. 89.) Interest which accrues *after* the enforceable due date of the principal indebtedness becomes an incident to that principal, is not separable therefrom, and may not be the subject of a separate cause of action. This because such interest as thus accrued is not a contract obligation and is recoverable only by operation of law as damages as an incident to the recovery of the principal indebtedness. (*Davison* v. *Klaess, supra; Matter of Crane* v. *Craig, supra.*)

This distinction is emphasized in situations where the principal indebtedness has been paid and a subsequent action sustained for interest which accrued prior to the enforceable due date of the principal indebtedness. Likewise, where the principal had not been paid a separate action for such interest has been sustained. Contrariwise, a separate recovery in respect

of interest accruing *after* the enforceable date of the principal obligation was denied as not separable from the principal indebtedness to which it is an incident. (*Southern Central R. R. Co.* v. *Town of Moravia, supra;* 33 C. J., Interest, § 179; 30 Am. Jur., Interest, § 12.) In the instant case the enforcement of the payment of the principal indebtedness could not be had under the moratory statutes until there had been a breach in the form of a failure to pay interest and taxes. The causes of action here in suit which relate to interest and taxes arose from contract obligations and accrued prior to the enforceable due date of the principal indebtedness precisely as in *Johnson* v. *Meyer* (*supra*). Hence they are separable from the principal indebtedness and properly the subject of separate causes of action and enforcement without regard to whether the principal has been paid or not. The separateness of these causes of action for such interest and taxes existed under the adjudicated cases prior to the enactment of the moratory statutes. These latter statutes did not create the separate character of causes of action for principal, interest and taxes. Hence, in an action at law particularly, it is error to assume that all of these items were consolidated with principal and enforceable only as a single indebtedness.

It is urged that failure to sustain this second defense effects an undue enrichment of the plaintiff obligee, because of the effect of the facts set out in the concededly insufficient first defense, to wit, that the plaintiff has become the owner of the property which was the security for the principal of each bond. Apart from the concession that transaction had no such effect. In the cause of action for the principal indebtedness on the bonds the defense of offset as to the fair value of the property under section 1083-b has been left untouched. In that action these corporate obligors are free to establish the extent to which the principal indebtedness has been extinguished. There is, therefore, no undue enrichment as the value of the security is available as to principal to the corporate obligors. There is nothing to prevent the payment of the principal indebtedness by the corporate obligors. They would thus be subrogated to the plaintiff's rights in respect of the security and could take over the property, if it has a value in the amount they assert. If it be deemed that the taking of this property was, in fact, payment, though there is no defense of payment pleaded, then plaintiff was in the position of one receiving a payment without

any express agreement as to the manner of application thereof either to principal, or to interest that accrued prior to the enforceable due date thereof, and plaintiff was free to apply the payment, to wit, the property, either to principal or to interest (*Davison* v. *Klaess, supra*), and it has seen fit to apply it as a payment on account of principal, as is indicated by its separate action against the corporate obligors for the principal amount of the indebtedness. That it was a mere payment on account is probably, but not conclusively, indicated by the fact that the owners of the equity of redemption yielded up the property, although not under the hazard of any deficiency judgment, on a payment to them of $100. Plaintiff was free to obtain possession from owners, not personally obligated, by way of such $100 payment rather than go to the greater expense of carrying through a foreclosure and bidding in the property on the sale. But the undisputed facts show that the property was not, in form, a payment of this indebtedness because the conveyance was taken by a deed which specifically precluded a merger of the fee and the mortgage and explicitly preserved the lien of the mortgage so that it is available, by subrogation, to the use of these corporate obligors.

Whether a merger has occurred is always a question of intention, expressed or implied. Presumptions may not be invoked where the parties have by unequivocal language expressly agreed that there is to be no merger. If a presumption were to be invoked here, the presumption would be that there was no merger because the interest of the obligee is subserved by having no merger. (*Townsend* v. *Provident Realty Co.*, 110 App. Div. 226; *Huntley* v. *ReVoir*, 66 Hun, 291; *Hubbell* v. *Blakeslee*, 71 N. Y. 63; *Clift* v. *White*, 12 N. Y. 519; *Clements* v. *Griswold*, 46 Hun, 377; 1 Wiltsie on Mortgage Foreclosure [5th ed.] § 247.)

In enforcing in an action at law its claims against the corporate obligors, without regard to the security, plaintiff is asserting an absolute right. This is an action between an obligee or mortgagee and the original obligors on the bonds for debts which arose during the period of that relationship; it is not between a grantor and a grantee for debts arising during the period of such relationship. This distinction is important. As it is between a mortgagee or obligee and the original obligors, such an obligee is not subject to certain restrictions imposed by law upon a grantor. (*Kmetz* v. *De Ronde*, 231 N. Y. 641.)

A mortgagee or obligee may sue upon a grantee's covenant of assumption of payment without resort to the security although a grantor may not. (*Burr* v. *Beers,* 24 N. Y. 178; *Thorp* v. *Keokuk Coal Co.,* 48 N. Y. 253; *Kmetz* v. *De Ronde, supra.*) An obligee *a fortiori* may sue the original obligors on a bond, without resort to the security (*Calvo* v. *Davies,* 73 N. Y. 211), especially where the obligee has possessed itself of the security in a transaction with *one other than* the obligors under the bond. Of course, where one reduces the security to possession, in an action for the *principal* of the bond, the value of the security may be offset. This opportunity has been made available to the corporate obligors in the undisturbed pending action for the principal. It is error, therefore, to assert that plaintiff is confined to enforcing its right in foreclosure or within limitations claimed to inhere in an action in foreclosure.

There is envisioned a possibility that the obligee, while holding the fee with the lien of the mortgage preserved, might claim interest on the bonds as against the corporate obligors. *First,* no such claim is here involved. *Second,* under the principle above stated, where interest accrues after the principal has become enforceably due, a separate cause of action for such interest may not be enforced as it becomes an incident to the principal in the form of damages and the value of the fee may be offset as against such principal in an action therefor. *Third,* under familiar doctrine — the rule obtaining between a grantor and grantee — the usufruct as well as the fee would be the primary fund in the hands of the obligee for the payment of such interest just as would be the case in respect of any fee owner who had acquired the property but has not personally assumed payment of the mortgage. In such a situation the plaintiff would be a grantee of the corporate obligors, because of the grant from the Jacksons, the immediate grantees of the corporate obligors; hence the security would become the primary fund for satisfaction of such a claim arising during such a relationship. (*Matter of Wilbur* v. *Warren,* 104 N. Y. 192; *Slauson* v. *Watkins,* 86 N. Y. 597; *Kmetz* v. *De Ronde, supra.*) Hence double satisfaction or unjust enrichment cannot ensue.

Unless the above principles and cited cases lack authority and stability, the conclusion is inescapable that they sustain the Special Term's rulings and require that the order and judgment in this severed action at law should be affirmed. I therefore dissent and vote to affirm the order and judgment.

CLOSE, P. J., concurs with JOHNSTON, J.; HAGARTY, J., concurs in separate opinion; CARSWELL, J., dissents in opinion, and votes to affirm the order and judgment; TAYLOR, J., concurs with CARSWELL, J.

Order and judgment (one paper) modified on the law and the facts by striking therefrom everything following the words " hereby is " in the first ordering paragraph and inserting in place thereof the following: " granted to the extent of striking out the first separate and complete defense contained in appellants' amended answers; and in all other respects the motion is denied." As thus modified the order and judgment, insofar as appealed from, is affirmed, with ten dollars costs and disbursements to appellants.