200 E. 64TH ST. CORP., Petitioner, *v.* A. BRUCE MANLEY et al., Constituting the State Tax Commission, et al., Respondents.

Third Department, March 7, 1974.

*Berg, Mezansky & Dorf* (*David Berg* and *John Dorf* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Vincent P. Molineaux* and *Ruth Kessler Toch* of counsel), for State Tax Commission of the State of New York, respondent.

*Norman Redlich, Corporation Counsel* (*Isaac C. Donner* and *Samuel J. Warms* of counsel), for City of New York, respondent.

GREENBLOTT, J. This is a proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by an order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission, which held that a consolidation agreement recorded on June 30, 1970 in the Register's office of New York County in Reel 177 at page 721: (1) was a mortgage within the meaning of section 250 of the Tax Law; (2) was not a supplemental mortgage entitled to an exemption from the tax on mortgages under section 255 of the Tax Law; (3) was subject to the mortgage recording tax; and (4) the mortgage tax should have been computed upon the appraised value of the property secured pursuant to section 256 of the Tax Law.

On November 3, 1967, 64th Street-Third Avenue Associates, a partnership (hereinafter referred to as Associates) acquired by assignment the tenant's interest in a long-term ground lease covering the premises at 1081-1089 Third Avenue and 206 E. 64th Street, New York City.

On March 12, 1968 Associates executed and delivered to First National Bank of Boston (hereinafter referred to as First Boston) a building loan mortgage covering the ground lease and the building and improvements which were to be erected on the premises by Associates, to secure the payment of a mortgage note in the principal amount of $5,500,000 and interest. A mortgage tax on the said mortgage of $27,500 was paid at the time of the recording thereof on March 13, 1968.

On June 30, 1970, Associates assigned to its corporate nominee, 200 E. 64th St. Corp., the petitioner herein, by an assignment dated June 15, 1970, all of its interest in the ground lease covering the premises and the new building and improvements which had been erected thereon, subject to the assigned mortgage.

On June 30, 1970, the following additional transactions contemporaneously took place:

(a) Pursuant to a purchase agreement entered into between Associates and John Hancock Mutual Life Insurance Company (Hancock) on March 12, 1968 (contemporaneously with the execution and delivery of the assigned note and assigned mortgage by Associates to First Boston on March 12, 1968), Hancock purchased the leasehold from petitioner for a purchase price of $1, subject to the assigned mortgage on the leasehold held by Hancock in the unpaid principal amount of $5,500,000.

(b) Pursuant to a buy-sell agreement entered into on March 12, 1968, between First Boston and Hancock, First Boston assigned to Hancock the assigned mortgage and assigned note secured thereby, for a purchase price of $5,500,000.

(c) Pursuant to said purchase agreement dated March 12, 1968, Hancock, as seller, and petitioner, as purchaser, entered into the consolidation, modification and extension agreement (Consolidation Agreement) which provided, among other things, that the lien of the assigned mortgage was to be consolidated and merged with and into the interest in the leasehold that was assigned to Hancock, and Hancock would sell the leasehold to petitioner for a purchase price in the principal amount of $5,500,000 as "evidenced by the Assigned Note and secured by the Assigned Mortgage" and payable in monthly installments over a period of 40 years and 9 months (with an interest factor of 7½% per annum on reducing balances of such purchase price). In addition, the Consolidation Agreement provided that petitioner would make an annual variable payment representing a share of the operating profits to Hancock in an amount equal to 50% of the excess, if any, of the net annual rental income for each calendar year commencing with the calendar year 1971, over the sum of the monthly installment payments made in each calendar year in reduction of the $5,500,000 purchase price, plus $70,000 (except that in calculating the annual variable payment with respect to the calendar year 1971, only the months of April through December, 1971 shall be taken into account).

The Consolidation Agreement also contained the following provision: "The Seller and the Purchaser hereby consolidate and merge the lien of the Assigned Mortgage with and into the right, title and interest assigned to the Seller under the Assignment. The Seller hereby agrees to sell and the Purchaser hereby agrees to purchase said right, title and interest, as merged and consolidated with said lien, subject to, and in accordance with, the terms and provisions of this Agreement, for the purchase price specified in section 3. Such sale shall be limited to the right, title and interest acquired by the Seller under the Assignment, as consolidated and merged with the lien of the Assigned Mortgage ".

Following the assignment of the leasehold by petitioner to Hancock on June 30, 1970, and their contemporaneous entry into the Consolidation Agreement on the same date, petitioner assigned its interest therein to Associates.

At the time of recording the Consolidation Agreement, the recording officer held that the instrument was to be recorded as a supplemental mortgage without payment of tax, provided that a statement under oath was filed as provided by section 255 of the Tax Law, and that the determination of exemption was to be reviewable by the State Tax Commission.

On July 28, 1970, the State Tax Department notified the Register of New York County that a new mortgage tax should have been paid when the Consolidation Agreement was recorded and that the amount of tax should have been computed, pursuant to section 256 of the Tax Law, upon the appraised value of the property secured by the said Consolidation Agreement.

The dispute arises in this case because Hancock simultaneously held title to the construction mortgage and the leasehold interest, which led the State Tax Commission to the conclusion that the first mortgage had been extinguished so that the consolidation agreement could not be a supplemental mortgage. While the general rule is that where the legal title to the property and the mortgage become vested in the same owner, the lesser is merged in the greater, the doctrine of merger has never been favored. The estates will be held to be separate when justice requires and such was the intention of the parties. (*Dunkum* v. *Maceck Bldg. Corp.*, 256 N. Y. 275, 281.)

The intent of the owner of the two estates must be determined from all the circumstances, including the legal effect of the documents executed between the parties. A merger will be prevented whenever it will cause injury to the owner and work an injustice upon him. (*Dunkum* v. *Maceck Bldg. Corp.*,

*supra,* p. 281.) Furthermore, in the absence of some intervening right in another, the owner is free to merge the estates or to observe the dichotomy, as he prefers. (*Smith* v. *Roberts,* 91 N. Y. 470.)

The record demonstrates that Hancock, by recording the assignment to it of the mortgage and retaining the assigned mortgage as modified and extended, clearly intended that the mortgage secured thereby remain, as so modified and extended, in full force. The language of the Consolidation Agreement supports this conclusion. The preliminary statement declares:

" The parties hereto desire to provide herein for: &ast; &ast; &ast;

" (ii) the sale by the Seller of said right, title and interest, as consolidated and merged with said lien, *in consideration of the obligation of the Purchaser to pay the principal amount of $5,500,000 evidenced by the Assigned Note and secured by the Assigned Mortgage* and

" (iii) the obligation of the Purchaser to pay the purchase price of $5,500,000 which obligation shall be paid in accordance with, and secured by, this Agreement " (emphasis added).

In our view the Consolidation Agreement meets the requirements of section 255 of the Tax Law. In accord with the policy that taxing statutes are to be liberally construed in favor of the taxpayer (*Metropolitan Convoy Corp.* v. *City of New York,* 2 N Y 2d 384, 390), this statute should be interpreted in a manner which will give effect to its spirit. The statute creates an exemption to taxability upon the recordation of supplemental mortgages, and includes in the definition thereof mortgages executed or created pursuant to " some provision or covenant " in a prior mortgage which has been recorded and upon which the tax has been paid. In the present case, the Consolidation Agreement pursuant to which taxpayer assumed the obligation to pay the purchase price of $5,500,000 which had been secured by the first mortgage is not expressly referred to in some " provision or covenant " in said original mortgage which had previously been given to the bank. However, paragraph 16 of the mortgage states: " This mortgage is made pursuant to a certain building loan contract between the mortgagor and the mortgagee dated March 12, 1968, and intended to be filed in the office of the Clerk of the County of New York, on or before the date of the recording of this mortgage, and is subject to all the provisions of said contract as if they were fully set forth herein and made part of this mortgage." In turn, the building loan contract repeatedly refers to both the mortgage and the purchase agreement (all three documents having been executed on the

same day) between the petitioner and Hancock, and clearly indicates the intent of the parties that upon completion of construction, Hancock, by assignment of the mortgage and performance of the parties' various obligations, would replace the bank as creditor-mortgagee. Of course, the debt and the collateral were to remain unchanged.

Thus, if section 255 is given a reasonable construction, and one which will avoid double taxation (see *Matter of Suffolk County Fed. Sav. & Loan Assn.* v. *Bragalini*, 5 N Y 2d 579, 584–585), it will not be applied so as to impose a second tax upon the recordation of a document which does no more than to formally complete a transaction which was fully contemplated at the time of, and was part and parcel of, the original mortgage upon which the recording tax has already been paid.

This is not to say that the petitioner is free from further tax liability. Under section 255, the exemption from tax does not apply where a '' further indebtedness '' is created. While the sum of $5,500,000 is still secured by the same premises as before, the Consolidation Agreement provides for '' further indebtedness '' since the purchaser is required to make an annual variable payment to the seller in addition to the purchase price of $5,500,000. These additional annual payments are based upon net rental income of the property during the period that said agreement is in force. The parties provided in the Consolidation Agreement that the seller, upon recording the said agreement, would permit an appraisal of the property for the purpose of computing the value of the property covered by the agreement.

Section 256 of the Tax Law provides in part, as follows: '' If the principal indebtedness secured or which by any contingency may be secured by a mortgage is not determinable from the terms of the mortgage * * * such mortgage shall be taxable under section [253 of the Tax Law based] upon the value of the property covered by the mortgage ''.

Inasmuch as the provisions of the agreement provided for payments in addition to the sale price of $5,500,000 and interest, the amount due is not ascertainable on the face of the instrument and the tax must be computed upon the value of the property covered. (*People* v. *Gass,* 206 N. Y. 609.)

While an appraisal of the property for the purpose of computing the value of the property covered by the agreement is required, the Consolidation Agreement should be taxed only as to the '' further indebtedness '' created thereby, the result being that the petitioner should be permitted to deduct the amount of

the original mortgage ($5,500,000) from the appraised value of the property, and the tax should be imposed upon the balance.

The determination should be annulled, and the matter remitted for further proceedings not inconsistent herewith.

STALEY, JR., J. P. (dissenting). The terms of the purchase agreement dated March 12, 1968 were incorporated into the consolidation, modification and extension agreement of June 30, 1970, which specifically provided that the lien of the building loan mortgage merged into the right, title and interest of Hancock as the assignee of the ground lease, and by reason of such merger, the mortgage and its lien ceased to exist. Hancock as the holder of the unencumbered ground lease entered into a new contract for sale of the leasehold to petitioner as purchaser, for a purchase price of $5,500,000 which was payable in monthly installments over a period of 40 years and 9 months with interest at 7½%. Added to such payments was to be an annual variable payment representing a share of the operating profits.

The agreements recorded on June 30, 1970 disclose an intention to extinguish the building loan mortgage by merging it with the ground lease when both were acquired by Hancock so that Hancock would be the owner of an unencumbered ground lease and not merely the owner of a mortgage thereon.

The law is well settled that where the legal title and the ownership of the mortgage became vested in the same owner, the mortgage is thereby merged and extinguished unless the holder of both interests intends otherwise or equity requires it. (*Central Hanover Bank & Trust Co.* v. *Roslyn Estates,* 266 App. Div. 244, affd. 293 N. Y. 680; *Dime Sav. Bank of Brooklyn* v. *Coleman,* 267 App. Div. 828.)

In the buy-sell agreement dated March 12, 1968 (mortgagor's Exhibit 5), it is expressly stated that the "Purchase Agreement contemplates that John Hancock will acquire the Construction Mortgage Loan simultaneously with its acquisition of the Leasehold on the Closing Date, that the lien of the Construction Mortgage will be consolidated and merged with the Leasehold, and that the Leasehold, as consolidated and merged with such lien, will be resold to the Corporate Nominee."

In completing this agreement, the construction mortgage was extinguished when acquired by Hancock and was nonexistent upon delivery of the Consolidation Agreement which effected an executory sale of the leasehold as merged with the mortgage to petitioner. This executory contract of sale was recorded as security for the obligations of the purchaser under that contract. Such a contract when recorded is subject to the mort-

gage recording tax (Tax Law, § 250; *Matter of Drobner* v. *Chapman,* 275 App. Div. 520), unless it is exempt as a supplemental mortgage under section 255 of the Tax Law.

The Consolidation Agreement does not, however, qualify as a supplemental mortgage because it fails to meet the requirements of any of the three categories set forth in section 255, namely: (1) to correct or perfect a prior recorded mortgage, or (2) pursuant to some provision or covenant in the prior recorded mortgage, or (3) to impose an additional mortgage on property other than that covered by the prior recorded mortgage as additional security for the original indebtedness secured by the prior recorded mortgage.

Clearly, this executory contract does not qualify as a supplemental mortgage but, being an instrument providing for the sale of realty and payment in installments over a period of years, and under which the purchaser was entitled to possession is clearly an executory contract of sale and subject to tax under section 250 of the Tax Law.

The Consolidation Agreement replaced and was substituted as a security instrument for the construction mortgage. A mortgage which replaces or is a substitute for a prior recorded mortgage is not a supplemental mortgage entitled to exemption under section 255 of the Tax Law. (*Matter of Sheraton Corp. of Amer.* v. *Murphy,* 35 A D 2d 294.)

The Consolidation Agreement provides that the purchaser shall make an annual variable payment to the seller in addition to the purchase price of $5,500,000. These additional annual payments are based upon net rental income of the property during the period that said agreement is in force. The parties provided in the Consolidation Agreement that the seller, upon recording the said agreement, would permit an appraisal of the property for the purpose of computing the value of the property covered by the agreement.

Section 256 of the Tax Law provides, as follows: "If the principal indebtedness secured or which by any contingency may be secured by a mortgage is not determinable from the terms of the mortgage * * * such mortgage shall be taxable under section [253 of the Tax Law based] upon the value of the property covered by the mortgage ".

Inasmuch as the provisions of the agreement provided for payments in addition to the sale price of $5,500,000 and interest, the amount due is not ascertainable on the face of the instrument and the tax must be computed upon the value of the property covered. (*People* v. *Gass,* 206 N. Y. 609.)

The State Tax Commissioner properly determined that section 256 of the Tax Law applies to the computation of the mortgage tax due and that the appraisal value of the property should be used in the computation of the tax. The determination of the State Tax Commission should be confirmed.

SWEENEY and MAIN, JJ., concur with GREENBLOTT, J.; STALEY, JR., J. P., and KANE, J., dissent and vote to confirm in an opinion by STALEY, JR., J. P.

Determination annulled, and matter remitted for further proceedings not inconsistent herewith.