First National Bank & Trust Company of Ellenville et al., Respondents, v Hyman Novick Realty Corporation, Appellant, et al., Defendants.

Third Department, May 24, 1979

### APPEARANCES OF COUNSEL

*Oppenheim, Drew & Kane (Stephen L. Oppenheim* of counsel), for appellant.

*Kalter & Gottlieb (Michael R. Gottlieb* of counsel), for Nat Kagan Meat & Poultry, Inc., respondent.

*Robert B. Fiske, Jr., United States Attorney (Janis P. Farrell* and *Peter C. Salerno* of counsel), for United States of America, defendant.

### OPINION OF THE COURT

HERLIHY, J.

It is undisputed that, as of September, 1972, the plaintiffs designated as Nat Kagan Meat & Poultry, Inc., Harold Kagan and Pearl Kagan (hereinafter referred to as Kagans) acquired by assignment and renegotiation a first mortgage and a third mortgage and on September 20, 1972 the indebtedness secured was $434,368.65 on the first mortgage and $225,975.74 on the third mortgage. There was also an outstanding second mortgage on the premises held by Southern Tier Capitol Corporation (So. Tier) in the amount of $192,176.18. In October of 1972 and again in 1974 the Kagans assigned an interest in the

first mortgage held by the remaining plaintiff (bank) as collateral security for an indebtedness. The appellant was in default in June of 1973 when an order appointing a receiver and directing foreclosure was granted as to the first mortgage. The order directed the receiver to obtain fire insurance and he did so. Thereafter, the premises sustained fire damage in the spring or summer of 1974.

On February 12, 1974 the Kagans secured a judgment of foreclosure and sale on the third mortgage and on November 15, 1974 they bid it in. The third mortgage was thereupon, as a matter of law, satisfied as the Kagans took no deficiency judgment. Accordingly, at that time the Kagans owned the legal title to the premises subject to the first and second mortgages and the referee's deed to the Kagans so stated. The appellant remained indebted on the second mortgage to So. Tier and, since the record does not establish that the unencumbered property value exceeded the indebtedness of appellant to Kagans on the first mortgage, the appellant presumably continued to be indebted to the Kagans.

On September 10, 1974, So. Tier was granted a judgment of foreclosure and sale on the second mortgage.

On February 21, 1975, the receiver on the first mortgage received the fire insurance proceeds for the loss incurred in the spring or summer of 1974.

On June 17, 1975, the second mortgage foreclosure resulted in a successful bid by one Halperin who on the same day assigned his interest to the mortgagee, So. Tier. Thereafter, the Kagans, on July 11, 1975, entered into a contract with So. Tier and Halperin whereby So. Tier agreed to convey the premises to the Kagans and the Kagans agreed to thereafter convey the premises to Halperin. On July 15, 1975, So. Tier was deeded the premises by the referee in foreclosure and on the same day So. Tier conveyed the premises to the Kagans still *subject* to the first mortgage and to the contract of July 11, 1975.

On July 26, 1976 the Kagans conveyed the premises to the Laurels Country Club, Inc., subject to the first mortgage. On or about November 28, 1977 the bank assigned its interest in the first mortgage to Laurels Sullivan County Estates Corporation (Laurels) and on November 29, 1977 the foreclosure sale first authorized in June of 1973 was finally held with the Laurels being the successful bidder. On December 6, 1977, the property was deeded to Laurels following payment of its bid of

$310,000. The actual amount computed to be due on the first mortgage debt was $648,000.

The present proceeding was brought to determine entitlement to funds remaining in the hands of the receiver after the 1977 foreclosure sale to Laurels.

■ As to the United States, the record reveals that it has estate tax liens upon the estate of Gladys Novick, deceased, who owned stock in the appellant. Of course, whatever interest the appellant may have in the moneys remaining in the hands of the receiver, such interest would be an asset of the appellant and a stockholder has no legal title to corporate assets by virtue of stock ownership. (*Brock v Poor*, 216 NY 387, 401.) Accordingly, there is no basis for the assertion of the United States that it has a lien on any interest of the appellant in the receiver's fund.

■ It is apparent that the appellant has had no ownership interest in these premises since the foreclosure and sale on the third mortgage in February of 1974. While the statutory right of redemption remained technically viable as an interest in the premises pending a completion of the foreclosure procedures on the first mortgage (Real Property Actions and Proceedings Law, § 1341), in practicality it had no actual property value to the appellant as it would not result in any legal ownership interest in the property. The record reveals that prior to the sale of the premises pursuant to a foreclosure of the first mortgage, the appellant and the Kagans had both sought to establish their rights to moneys then held by the receiver. However, Special Term denied those motions upon the theory that regardless of whether or not there was any indebtedness still owing by a mortgagor (appellant) to a mortgagee (Kagans) a mortgagor or mortgagee could only claim surplus moneys held by a receiver following the establishment of entitlement thereto pursuant to section 1371 of the Real Property Actions and Proceedings Law (hereinafter referred to as section 1371). The result reached in this proceeding following the sale and conveyance of the property was effectively foretold by Special Term's prior decision. The Kagans were awarded the remaining fund and this appeal followed.

Subdivision 4 of section 1371 provides in mandatory terms that a mortgagee must be paid any moneys remaining in the hands of the receiver which exceeds his expenses to the extent that such moneys do not exceed the difference between the price paid for the property on sale and the amount of the

judgment of foreclosure and sale. In the present case the appellant has raised the issue that the debt itself was either completely extinguished or satisfied in part by virtue of the dealings of the Kagans as first and third mortgagee and owners of the legal title and possessory interest in the premises subsequent to the appointment of the receiver herein and prior to the 1977 first mortgage sale of the premises.

The decision of Special Term on the applications made before and after the sale of the premises would preclude a mortgagor from establishing that the indebtedness has been satisfied prior to the foreclosure sale for the purpose of finding the amount owing a mortgagee pursuant to subdivision 4 of section 1371. *However, no appeal was taken by the mortgagor herein from the judgment of foreclosure and sale or from any adverse determination in any of the proceedings which would have fixed the amount for which judgment of foreclosure and sale was entered.* It is an academic rule that judgments may not be attacked in collateral proceedings as to findings therein which are final and binding on those parties. Accordingly, the question of equitable satisfaction of the mortgage debt cannot be reached unless permitted by the provisions of subdivision 4 of section 1371 which provides as follows: "Notwithstanding the foregoing provisions and irrespective of whether a motion for a deficiency judgment shall have been made or, if made, shall have been denied, the court shall direct that all moneys remaining in the hands of a receiver of the rents and profits appointed in the action, after the payment of the receiver's fees and the expenses of the receivership, or any moneys remaining in the hands of a mortgagee in possession or an assignee of the rents and profits of the premises, *shall be paid to the plaintiff to the extent of the amount, if any, by which the judgment of foreclosure and sale exceeds the amount paid for the property upon the sale.*" (Emphasis supplied.)

The Legislature initially enacted the provisions of section 1371 providing the mechanics of deficiency judgments for the purpose of protecting mortgagors from personal judgments during periods when real property pledged as collateral had no present market value because of economic recession or depression *(Klinke v Samuels,* 264 NY 144, 149). What is now subdivision 4 of section 1371 was enacted in 1934 (L 1934, ch 562) for the purpose of giving moneys collected by receivers to mortgagees as limited compensation for going through the mechanics of a foreclosure when the deficiency judgment

provisions would in fact erase the debt, without the collection of any money proceeds. To mechanically follow the statutory provisions of subdivision 4 of section 1371 in these cases where, subsequent to the commencement of foreclosure proceedings and prior to sale, the indebtedness has been satisfied by the mortgagor would be contrary to the intent of the Legislature (cf. *Dime Sav. Bank of Williamsburgh v Anshel Realty Corp.,* 58 AD2d 881).

In the present case the appellant relies upon the cases of *Central Hanover Bank & Trust Co. v Roslyn Estates* (266 App Div 244, affd 293 NY 680) and *Egan v Engeman* (125 App Div 743) to establish that the underlying indebtedness has been extinguished in full. In *Central Hanover (supra,* pp 248-249) in an action on a bond given as security for a mortgage, the Appellate Division stated: "It is a well-settled principle that where the mortgagee acquires the fee or equity of redemption by conveyance from the mortgagor *or a subsequent owner,* it constitutes a satisfaction of the mortgage and also of the bond accompanying it if the property, at the time of the conveyance, is equal in value to the debt for which it was mortgaged. If it be of less value than the debt, it is payment *pro tanto.*" It has been held that these cases are inapplicable where a foreclosure action is involved and the mortgagee is not seeking a personal recovery from the mortgagor *(Alden Hotel Co. v Kanin,* 88 Misc 2d 546, 549, affd 59 AD2d 679).

In this particular case the Kagans were not seeking a personal recovery from the appellant, and the record demonstrates that the Kagans did not intend to have a merger of their interests as mortgagee and legal owner. Accordingly, the judgment of foreclosure did not become a nullity or moot *(Evans Prods. Co. v Decker,* 52 AD2d 991, 992).

However, the holding of Special Term herein that the mortgage foreclosure action is not precluded by a merger of the interest of legal title and mortgagee does not mean that subdivision 4 of section 1371 requires the result it reached (see *Matter of 200 East 64th St. Corp. v Manley,* 44 AD2d 11, 18-19, mod 37 NY2d 744). We find that the appellant was entitled to raise the issue of ownership of the funds in the hands of the receiver upon the ground that the indebtedness was satisfied in whole or in part prior to the sale of the premises.

However, as observed at an earlier point in this decision, the mortgagor appellant failed to take the appropriate action to preserve for review by this court the amount due and owing

in the final judgment of foreclosure. The provisions of subdivision 4 of section 1371 are clear and unambiguous and, in the absence of any showing that the final judgment of foreclosure and sale is not binding on the mortgagor, its statement of indebtedness must be applied *(Dime Sav. Bank of Williamsburgh v Anshel Realty Corp., supra)*.

The separate contention of the appellant that the proceeds of the fire insurance belong to it because following the satisfaction of the indebtedness by the foreclosure proceedings the Kagans had no insurable interest and the indebtedness was paid in full as a matter of law has no merit. Unlike the situation in *Whitestone Sav. & Loan Assn. v Allstate Ins. Co.* (28 NY2d 332, 335) the proceeds at issue here were paid to the receiver who was the procurator at the direction of the court. The question of a deficiency judgment to continue the indebtedness has no bearing on the matter since the issue is resolved by subdivision 4 of section 1371 and its mandate as to distribution. The question as to insurable interest that can be raised in a case where the proceeds are held by an escrow agent *(Moke Realty Corp. v Whitestone Sav. & Loan Assn.,* 82 Misc 2d 396, affd 51 AD2d 1005, affd 41 NY2d 954) is inapposite as to moneys secured by a receiver. Any issue of insurable interest was resolved by the payment of the fund by the insurance company and the holding of such fund by the receiver as receiver of the rents and profits.

Upon the somewhat peculiar facts in this case, it appears that the appellant has failed to establish any basis for concluding that in fact Kagan is receiving more than a just satisfaction of the mortgage, except in a legalistic sense which is rendered inapposite by subdivision 4 of section 1371.

The order should be affirmed, without costs.

MAHONEY, P. J., GREENBLOTT, STALEY, JR., and MIKOLL, JJ., concur.

Order affirmed, without costs.